IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COLIN P. MARKEY; KATHY MOORE; )
PAUL A. MOORE; THEODORE H. )
SWINDELLS; and SHERIE SWIONTEK )
)
    Plaintiffs, )
)
v.
                           07CV6631
                            JUDGE NORGLE
HYDROGEN POWER, INC., f/k/a     MAGISTRATE JUDGE BROWN
EQUITEX, INC.,

    Defendant. )

## NOTICE OF REMOVAL

Defendant, Hydrogen Power, Inc., formerly known as Equitex,

Inc., ("HPI"), pursuant to 28 U.S.C. Sections 1441, 1446(a) and

1332(a), hereby states the following grounds for removal of this

action to the United States District Court for the Northern

District of Illinois:

    1.    Plaintiff, Colin P. Markey, is a citizen of

Illinois who resides in Chicago, Illinois.

    2.    Plaintiffs Kathy Moore and Paul A. Moore are

citizens Illinois who reside in Lake Forest, Illinois.

    3.    Plaintiff Theodore H. Swindells is a citizen of

California who resides in San Francisco, California.

    4.    Plaintiff, Sherie Swiontek is a citizen of

Illinois who resides in Gurnee, Illinois.

5. Defendant, HPI is a corporation incorporated in the state of Delaware, with its principal place of business located in the State of Washington and is therefore deemed to be a citizen of the states of Delaware and Washington.

6. The plaintiffs seek damages in this action in an amount in excess of $420,000.

7. This is a civil action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $420,000, and therefore could be brought in this Court pursuant to 28 U.S.C. Section 1332(a) as a matter over which this Court has original jurisdiction.

8. Defendant, HPI, is a corporation incorporated in the state of Delaware, with its principal place of business located in the State of Washington and is therefore deemed to be a citizen of the states of Delaware and Washington, and is not a citizen of the state of Illinois.

9. Attached to this Notice of Removal as Exhibit 1 is a copy of the Summons and Complaint served on defendant HPI on October 26, 2007, for an action pending in the Circuit Court of Cook County, Illinois.

10. Pursuant to 28 U.S.C. Section 1441, defendant HPI is entitled to remove this action to the United States District Court for the Northern District of Illinois.

WHEREFORE, defendant HPI hereby gives notice of removal of this action to the United States District Court for the Northern District of Illinois.

HYDROGEN POWER, INC.

By: _____
    Its Attorney

David E. Schaper
11 Oxford Drive
Lincolnshire, Illinois 60069
Telephone No.: (847) 948-9048

Counsel for Hydrogen Power, Inc.

## Certificate of Service

I hereby certify that on November 26, 2007, I caused a true and accurate copy of the forgoing to be served on counsel for the plaintiffs by depositing it with the U.S. Postal Service, proper first class postage prepaid, addressed to that counsel at his business address as follows:

James M. Carlson, Esq.
Ungaretti & Harris, LLP
3500 Three First National Plaza
Chicago, Illinois 60602

David E. Schaper
Counsel for Defendant Hydrogen Power, Inc.

Exhibit 1

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

CCG N001-10M-1-07-05 (            )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ LAW _____ DIVISION

**(Name all parties)**

COLIN P. MARKEY; KATHY MOORE; PAUL A. MOORE;
THEODORE H. SWINDELLS; and SHERIE SWIONTEK

v.

HYDROGEN POWER, INC. f/k/a EQUITEX, INC.

No. _____ BY:_____

RECEIVED

### SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room **801** _____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date. **OCT 24 2007**

Atty. No.: 34355

Name: Ungaretti & Harris, LLP

Atty. for: Plaintiffs

Address: 3500 Three First National Plaza

City/State/Zip: 60602

Telephone: (312) 977-4400

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

_____
**Clerk of Court**

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
### COUNTY DEPARTMENT, LAW DIVISION

COLIN P. MARKEY; KATHY )
MOORE; PAUL A. MOORE; )
THEODORE H. SWINDELLS; and )
SHERIE SWIONTEK, )
                        )
        v.           )
                        )
HYDROGEN POWER, INC. f/k/a )
EQUITEX, INC. )
                        )

Case No.: 2007 L 012033

Calendar U

### COMPLAINT

COLIN P. MARKEY, KATHY MOORE, PAUL A. MOORE, THEODORE H. SWINDELLS, and SHERIE SWIONTEK (collectively the "Shareholders"), by their counsel, Ungaretti & Harris, LLP, hereby submit this Complaint for damages in an amount in excess of $420,000 plus interest and costs, against HYDROGEN POWER, INC. f/k/a EQUITEX, INC. ("Equitex") and state as follows:

### INTRODUCTION

1.     This is an action for damages brought as a result of Equitex's breach of a settlement agreement by and between the Parties dated May 10, 2006 (the "Settlement Agreement") and Equitex's related failure to perform under a registration agreement by and between the Parties dated May 10, 2006 (the "Registration Agreement").

### THE PARTIES

2.     Plaintiff Colin P. Markey is an individual domiciled in Chicago, Illinois.

3.     Plaintiff Kathy Moore is an individual domiciled in Lake Forest, Illinois.

1032668v2

4.     Plaintiff Paul A. Moore is an individual domiciled in Lake Forest, Illinois.

5.     Plaintiff Theodore H. Swindells is an individual domiciled in San Francisco, California.

6.     Plaintiff Sherie Swinotek is an individual domiciled in Gurnee, Illinois.

7.     Equitex, Inc. was a Delaware corporation with its principle place of business in Englewood, Colorado.

8.     In March, 2006, Equitex, Inc. merged with Defendant Hydrogen Power, Inc. and changed its name to Hydrogen Power, Inc.  Hydrogen Power, Inc. is a Delaware corporation with its principle place of business in Seattle, Washington.

## JURISDICTION AND VENUE

9.     Jurisdiction and venue are proper in this Court.

10.     Jurisdiction is proper under 735 ILCS 5/2-209(a)(7) because the contracts at issue in this lawsuit are substantially connected with Illinois.

11.     Equitex sent communications (including e-mails, faxes, and telephone calls) to the Shareholders in Illinois regarding the negotiation and execution of the contracts at issue in this lawsuit.

12.     The contracts were negotiated, in part, in Illinois.

13.     The Shareholders executed the contracts, in part, in Illinois.

14.     The performance of the contracts at issue in this lawsuit was to take place, in part, in Illinois.

15.     Venue is proper under 735 ILCS 5/2-101 because the Settlement Agreement was entered into and was to be performed, in part, in this county.

- 2 -

## FACTS COMMON TO ALL COUNTS

### The Settlement Agreement Between the Parties

16.    On May 10, 2006, the Shareholders and Equitex entered into the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

17.    The Settlement Agreement arises from a dispute between the Shareholders and Equitex regarding Convertible Promissory Notes dated April 14, 2004 (the "Notes").

18.    The Notes were issued by FastFunds Financial Corporation, Inc. ("FastFunds") to the Shareholders. (*See* Settlement Agreement, Ex. A at 1). FastFunds is a majority owned publicly-traded subsidiary of Hydrogen Power, Inc. based in West Palm Beach, Florida.

19.    Equitex and FastFunds failed to meet their collective contractual and fiduciary responsibilities to the Shareholders under the Notes.

20.    In an effort to resolve the issues stemming from Equitex and FastFunds' failure to meet their collective responsibilities under the Notes, Equitex entered into the Settlement Agreement with Shareholders.

21.    Pursuant to the Settlement Agreement, the Shareholders agreed to release all claims against FastFunds and Equitex related to the Notes.  (*See* Settlement Agreement, Ex. A at 3.)

22.    In exchange for those releases, Equitex agreed to issue and deliver to the Shareholders over 54,000 shares of common stock of Equitex.  (*See* Settlement Agreement, Ex. A at 1.)

## The Stock Issue Under the Settlement Agreement

23.     The Settlement Agreement specifically provides for common stock shares of Equitex to be issued and delivered to the Shareholders in the following amounts:

| Shareholder | Amount |
|---|---|
| Theodore H. Swindells | 54,000 |
| Paul A. Moore | 30,550 |
| Kathy Moore | 13,500 |
| Colin P. Markey | 9,950 |
| Sherie Swiontek | 900 |

(*See* Exhibit 1 of Settlement Agreement, Ex. A.)

24.     Equitex also contracted under the Settlement Agreement to deliver the common stock shares at the price of at least $4.00 a share.  In the event that the shares of common stock were valued at under $4.00 at the time of sale by the Shareholders, Equitex promised to "deliver to each [Shareholder], within fifteen (15) business days of receipt of notice to such effect, such difference in cash or additional shares of common stock..."   (emphasis added)  (*See* Settlement Agreement, Ex. A at 2.)

25.     The effect of the language in the Settlement Agreement was that each share of stock issued and delivered by Equitex to the Shareholders would be worth, at least, $4.00 when the Shareholders sold their stock.

26.     Pursuant to the Settlement Agreement, Equitex contractually agreed to issue and deliver the common stock, at its specified value, by May 29, 2006 at the latest.  (*See* Settlement Agreement, Ex. A at 1.)

## The Sale of the Stock at Far Below $4.00 Per Share

27.     Once Equitex issued and delivered the stock to the Shareholders, the Shareholders would then have the option of selling the shares pursuant to a stock sale and lock-up agreement by and between the Parties dated May 10,

- 4 -

2006 (the "Lock-Up Agreement").    A true and correct copy of the Settlement Agreement is attached hereto as Exhibit B.

28.    By May 29, 2006, Equitex delivered the stock shares to the Shareholders in the following numbers:

| Shareholder | Amount |
|---|---|
| Theodore H. Swindells | 54,000 |
| Paul A. Moore | 30,550 |
| Kathy Moore | 13,500 |
| Colin P. Markey | 9,950 |
| Sherie Swiontek | 900 |

29.    However, when the Shareholders sold their shares of stock pursuant to the Lock-Up Agreement, the value of the Equitex stock was far below $4.00 per share.

30.    Rather than selling for $4.00 per share, the Stockholders sold their stock at the following average prices:

| Shareholder | Average Price of Stock at Sale |
|---|---|
| Paul A. Moore | $0.98 |
| Kathy Moore | $0.90 |
| Colin Markey | $0.96 |
| Theodore H. Swindells | $0.79 |
| Sherie Swiontek | $0.47 |

31.    Equitex is contractually obligated to make up the difference between the guaranteed price of $4.00 per share and the price per share at which the Shareholders sold their shares.

32.    Under the Settlement Agreement, Equitex could make up this price difference by either issuing additional shares of stock or paying cash to the Shareholders. (See Settlement Agreement, Ex. A at 2.)

33.    Equitex has refused to make up this difference in either way.

34.    Despite numerous requests to correct its breach of the Settlement Agreement, Equitex has refused to do so.

### The Registration Agreement

35.    In further consideration of the promises contained in the Settlement Agreement, Equitex also entered into a Registration Agreement (the "Registration Agreement") with the Shareholders.  A true and correct copy of the Registration Agreement is attached hereto as Exhibit C.

36.    Pursuant to the Registration Agreement, Equitex agreed to prepare and file the appropriate registration statement with the SEC covering the resale of the common stock shares to the Shareholders.  (*See* Registration Agreement, Ex. C at 2.)

37.    Equitex contractually promised to cause the registration statement to be declared effective by the SEC on or prior to June 26, 2006. (*See* Registration Agreement, Ex. C at 2.)

38.    Equitex also contractually promised to use its "best efforts" to cause the statement to be declared effective.  (*See* Registration Agreement, Ex. C at 2.)

39.    The Shareholders were unable to sell the Equitex stock issued pursuant to the Settlement Agreement until the registration statement was deemed effective.

40.    While Equitex did file the registration statement, the SEC did not declare the registration statement effective by June 26, 2006.

41.    In fact, the registration statement was not declared effective until February 9, 2007.

42.    As a result, the Shareholders were prevented from selling their shares at a higher price at the target date of June 26, 2006.

### The Consequences of Equitex's Breach of the Registration Agreement

43.    The Registration Agreement provides for specific compensation by Equitex to the Shareholders in the event that Equitex fails to obtain effectiveness of the statement on or prior to June 26, 2006.  (*See* Registration Agreement, Ex. C at 3.)

44.    As stated above, Equitex breached the Registration Agreement by, *inter alia*, failing to obtain the effectiveness of the required registration statement by June 26, 2006.

45.    The Registration Agreement provides for a graduated calculation of additional payment by Equitex upon such failures.  The calculation is based upon the original, total principal amount converted into common stock by the Settlement Agreement.  (*See* Registration Agreement, Ex. C at 3.)

46.    This additional payment required by Equitex for its breaches accrues each additional month.

47.    Under the Registration Agreement, interest also accrues monthly on this additional payment owed by Equitex to the Shareholders.   (*See* Registration Agreement, Ex. C at 3.)

48.    The additional payments and interests owed by Equitex to the Shareholders have been accruing since May 15, 2006.

49.    Equitex has not paid anything pursuant to the provision of the Registration Agreement requiring this additional payment to the Shareholders.

50.    Equitex has failed to meet its obligations under the Registration by, *inter alia*: (a) failing to cause the registration statement to be declared effective on or prior to June 26, 2006; and (b) failing to use best efforts to cause the registration statements to be declared effective on or prior to June 26, 2006.

- 7 -

51.    As a result of Equitex's multiple breaches of both the Settlement Agreement and the Registration Agreement, the Shareholders have been damaged in an amount in excess of $420,000.

## COUNT I
### (Breach of Contract – Settlement Agreement)

52.    The Shareholders incorporate by reference the allegations contained in Paragraphs 1 through 51 as if restated in this paragraph.

53.    The Shareholders and Equitex entered into a valid contract for the issue and delivery of common stock, at the agreed upon value of $4.00 per share, in exchange for full releases by the Shareholders as detailed in the Settlement Agreement.

54.    At all times relevant to this dispute, the Shareholders performed their contractual obligations under the Settlement Agreement in full.

55.    In breach of their contractual duties, Equitex has failed to issue and deliver the common stock at the price agreed to in the Settlement Agreement.

56.    Since Equitex's initial breach of the Settlement Agreement, the Shareholders have made every attempt to work with Equitex in order to resolve Equitex's breach. These efforts have been in vain.

57.    As late as October 17, 2007, the Shareholders – through counsel – have made a demand for Equitex to meet the price floor as provided for in the Agreement. A true and correct copy of the October 17, 2007 correspondence is attached hereto as Exhibit D.

58.    Despite these efforts, Equitex continues to refuse to perform its contractual duties.

59.    As a result of Equitex's failure to perform, the Shareholders have been damaged in an amount in excess of $320,000, plus interest and costs. The Shareholders' damages continue to accrue.

### PRAYER FOR RELIEF

WHEREFORE, the Shareholders request that this Court enter judgment as follows:

A.    Award Shareholders their damages described above in a total amount believed to exceed $320,000 plus interest plus costs; and

B.    Grant such other and further relief as this Court deems proper.

### COUNT II
### (Breach of Contract – Registration Agreement)

60.    The Shareholders incorporate by reference the allegations contained in Paragraphs 1 through 51 as if restated in this paragraph.

61.    Pursuant to the Registration Agreement, Equitex contractually promised to obtain effectiveness of the registration statement by June 26, 2006.

62.    Equitex failed to cause the registration statement to be declared effective by June 26, 2006.

63.    As a direct result, the Shareholders were unable to sell their stock shares at a higher market price at the target date of June 26, 2006.

64.    Pursuant to the Registration Agreement, Equitex contractually promised to use "best efforts" to obtain effectiveness of the contemplated registration statement.

65.    Equitex failed to use "best efforts" to obtain effectiveness of the contemplated registration statement.

66.    At all times relevant to this dispute, the Shareholders performed their contractual obligations under the Registration Agreement in full.

- 9 -

67.    Since Equitex's initial breach of the Registration Agreement, the Shareholders have made every attempt to work with Equitex in order to resolve Equitex's breach. These efforts have been in vain.

68.    As late as October 17, 2007, the Shareholders -- through counsel -- have made a demand for Equitex to perform under the Registration Agreement. (*See* Corr. of 10/17/07, Ex. D.) Again, Equitex has refused to perform.

69.    As a result of Equitex's failure to perform under the Registration Agreement, the Shareholders have been damaged in an amount in excess of $100,000 to be proved at trial, plus interest and costs. The Shareholder's damages continue to accrue.

### PRAYER FOR RELIEF

WHEREFORE, the Shareholders request that this Court enter judgment as follows:

B.    Award Shareholders their damages described above in a total amount believed to exceed $100,000 to be proved at trial, plus interest and costs; and

B.    Grant such other and further relief as this Court deems proper.

Dated:  October 24, 2007

Respectfully submitted,

COLIN P. MARKEY; KATHY MOORE; PAUL A. MOORE; THEODORE H. SWINDELLS; and SHERIE SWIONTEK

F. Thomas Hecht
James M. Carlson
Ungaretti & Harris, LLP
Firm No. 34355
3500 Three First National Plaza
Chicago, Illinois 60602
(312) 977-4400 (telephone)
(312) 977-4405 (facsimile)

# EXHIBIT "A"

05/11/06  11:38 FAX 18472858035          MAROON BELLS                          ☒002

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into effective as of May 10, 2006, by and among FastFunds Financial Corporation, Inc., a Nevada corporation ("FastFunds"), and Equitex, Inc. ("Equitex"), on the one hand, and the following holders of certain notes: MBC Global, LLC, an Illinois limited liability company ("MBC"), Corporate Capital, Inc. a Minnesota corporation, Carolyn Companies, a Colorado corporation, Moore Investments, Inc., an Illinois corporation, Paul A. Moore, Carolyn Moore, Kevin F. Flynn, as Trustee of the Kevin F. Flynn June 1992 Non-Exempt Trust., European American Perinvest Group Bermuda., a British Virgin Island corporation, Fritz Voelker, John Eric Landry, Colin P. Markey, Sherie Swiontek, Mark Savage and Daniel Ryweck (collectively referred to as the "Note Holders") on the other hand, with respect to the settlement of all claims between the foregoing parties to this Agreement, including those relating to certain Convertible Promissory Notes dated April 14, 2004, made by FastFunds to the Note Holders (as listed in Exhibit 1 attached, the "Notes"), and other related matters.  FastFunds and the Note Holders may be collectively referred to in this Agreement as the "parties" and individually as a "party."

In consideration of the payments, promises, mutual covenants and releases provided for in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, FastFunds and the Note Holders, intending to be legally bound, hereby agree as follows:

1.  **Securities.**  At a date mutually agreed upon by the parties, which shall be on or before the later of ten business days following receipt by Equitex of one or more counterpart originals of this Agreement signed by all of the Note Holder parties or May 15, 2006, Equitex shall issue and deliver to the Note Holders an aggregate of 180,000 shares of common stock of Equitex, to be divided pro rata with the number of shares for each Note Holder being set forth in Exhibit 1 attached to this Agreement.  All shares of Equitex common stock to be issued shall be duly authorized, fully paid and non-assessable and free of restrictions of any kind, other than restrictions noted by (i) a legend stating that the shares represented by the certificates are subject to the terms and conditions of that certain Stock Sale and Lock Up Agreement dated May 10, 2006, a copy of which is available from the issuing corporation upon written request, and (ii) a standard Securities Act restrictive

1

legend (until removal thereof pursuant to a legal opinion of Equitex's securities counsel which will be delivered within one (1) business day of the effective date of the Registration Statement). Prior to any securities being delivered, each of the Note Holders shall deliver the original Notes to an escrow agent mutually acceptable to all of the parties.  The Notes shall be returned to FastFunds for cancellation following the share of Equitex being issued and delivered to the Note Holders. The Note Holders shall also be required to execute and deliver a Shareholder Lookup Agreement in the form attached as Exhibit 2 prior to delivery of the shares.

2.  **Price Protection.**  Upon receipt by each Note Holder of the certificates contemplated by this Agreement, and the subsequent release from escrow and sale of the shares by each Note Holder, if the dollar amount received by such Note Holder from sales of common stock at the conclusion of the dates set forth in the STOCK SALE AND LOCK UP AGREEMENT is less than an average sales price of $4.00 per share, Equitex shall deliver to each Note Holder, within fifteen (15) business days of receipt of notice to such effect, such difference in cash or additional shares of common stock (valued at a per share conversion rate equal to the median closing price of Equitex common stock for the thirty (30) days preceding the date of such notice), at Equitex's option. The Note Holder shall provide the activity in such account to verify sales amounts and prices. During the period of time any of the shares are in escrow, but prior to their release, EQTX shall have a right to purchase some or all of the shares of any Note Holder in escrow at a price equal to the greater of the average Closing Price of the shares for the previous five (5) trading days or $4.00. Upon release of the shares from the Escrow Agent, this right shall expire, and the Note Holders may sell such shares in the market with the full price protection offered by this paragraph 2. The full price protection offered by this paragraph 2 shall only apply only to the shares released from escrow only if such shares are sold by the Note Holder within thirty (30) days of release of the shares from the Escrow Agent. Payment by EQTX for those shares purchased by EQTX shall be made within three (3) business days of EQTX's purchasing of said shares.

3.  **Settlement and Release.**  In consideration of the forgoing securities, each of the Note Holders, and their officers, directors, employees, agents, attorneys, stockholders, parent corporations, subsidiaries, affiliates (as defined in rules under the Securities Act of 1933), representatives,

2

05/11/06  11:38 FAX 18472956035          MAROON BELLS          ✎004

successors and assigns, and the heirs, executors, successors and
assigns thereof (the "Note Holder Affiliates") hereby forever
completely and unconditionally release, acquit and discharge
FastFunds and Equitex and their officers, directors, employees,
agents, attorneys, stock-holders, parent corporations,
subsidiaries, affiliates (as defined in rules under the
Securities Act of 1933), representatives, successors and
assigns, and the heirs, successors and assigns thereof
(collectively, the "Company Affiliates") from any and all past,
present or future claims, demands, liabilities, actions, causes
of action, debts, losses, counterclaims, set-offs, liabilities,
damages or suits of every kind or nature which the Note Holders
or the Note Holder Affiliates now have or may hereafter accrue
against FastFunds, Equitex or the Company Affiliates, whether
known or unknown, asserted or unasserted, absolute or
contingent, accrued or not accrued, including but not limited to
those arising out of, based upon, or in any way related to the
(a) the Notes; (b) any obligations to make any payments, or any
other monetary of non-monetary obligation or performance of any
sort arising under Notes or any other documents or agreements
allegedly entered into in connection with the Notes; (c) any
alleged duty purportedly existing or arising between the
parties; (d) any alleged obligation to make payment of any
interest, late fees or other charges; (e) any alleged
negligence, lack of due care, gross negligence, or alleged
intentional, willful or wanton misconduct resulting in any
alleged loss; (f) any lost profits, loss of business
opportunities, lost investment returns, lost investment
opportunities or other business losses; (g) any alleged
conspiracy or purportedly tortious conduct, misapplication of
proceeds, or alleged act or omission purportedly resulting in
injury; (h) any alleged fraud, concealment, misrepresentation,
negligent misrepresentation; failure to make disclosure, or
allegedly misleading or inaccurate statements purported to have
been made to by FastFunds or the Company Affiliates; (i) alleged
infliction of emotional distress, pain, suffering or other
similar injury; (j) any alleged costs, expenses, fees, charges,
attorneys fees or expenses, expert witness fees or expenses, or
third party costs, fees, expenses or charges, purportedly
incurred; and (k) any other claims, demands, actions, causes of
action or suits which the Note Holders or the Note Holder
Affiliates asserted, attempted to assert or could have asserted
against FastFunds, Equitex or the Company Affiliates (all of
which are hereinafter referred to as the "Released Note Holder
Claims") up to and including the date hereof; provided, however,
that the obligations of FastFunds and Equitex to perform this
Agreement are specifically excluded from the foregoing release.

3

05/11/06  11:38 FAX 18472956038          MAROON BELLS                    ☐005

4.    Settlement and Release.    FastFunds and the Company
Affiliates  hereby  forever  completely  and  unconditionally
release,  acquit  and  discharge  the  Note  Holders  and  the  Note
Holder Affiliates from any and all past, present or future
claims, demands, liabilities, actions, causes of action, debts,
losses,  counterclaims,  set-offs,  liabilities,  damages  or  suits
of every kind or nature which FastFunds or Company Affiliates
now have or may hereafter accrue against Note Holders or the
Note Holder Affiliates, whether known or unknown, asserted or
unasserted, absolute or contingent, accrued or not accrued,
including but not limited to those arising out of, based upon,
or in any way related to the (a) the Notes; (b) any obligations
to make any payments, or any other monetary of non-monetary
obligation or performance of any sort arising under Notes or any
other  documents  or  agreements  allegedly  entered  into  in
connection with the Notes; (c) any alleged duty purportedly
existing  or  arising  between  the  parties;  (d)  any  alleged
obligation to make payment of any interest, late fees or other
charges; (e) any alleged negligence, lack of due care, gross
negligence, or alleged intentional, willful or wanton misconduct
resulting in any alleged loss; (f) any lost profits, loss of
business opportunities, lost investment returns, lost investment
opportunities  or  other  business  losses;  (g)  any  alleged
conspiracy or purportedly tortious conduct, misapplication of
proceeds, or alleged act or omission purportedly resulting in
injury; (h) any alleged fraud, concealment, misrepresentation,
negligent misrepresentation, failure to make disclosure, or
allegedly misleading or inaccurate statements purported to have
been made to by Note Holders or the Note Holder Affiliates; (i)
alleged infliction of emotional distress, pain, suffering or
other similar injury; (j) any alleged costs, expenses, fees,
charges, attorneys fees or expenses, expert witness fees or
expenses, or third party costs, fees, expenses or charges,
purportedly incurred; and (k) any other claims, demands,
actions, causes of action or suits which FastFunds or the
Company Affiliates asserted, attempted to assert or could have
asserted against the Note Holders or the Note Holder Affiliates
(all of which are hereinafter referred to as the "Released
Company Claims") up to and including the date hereof, provided,
however, that the obligations of the Note Holders to perform
this Agreement are specifically excluded from the foregoing
release.    The Released Note Holder Claims and the Released
Company Claims may hereafter be referred to together as the
"Released Claims."

5.    Confidentiality.    Except as required by law, rule,
regulation, subpoena of a court, or order of a court, or to

4

enforce this Agreement, the parties agree on their own behalf and on behalf of their respective attorneys, agents, successors and assigns that neither the Parties nor the attorneys, agents, successors or assigns of the parties, will disclose to any other person or entity: (1) the contents or substance of this Agreement, (2) any of the facts or matters in controversy or dispute in connection with the Case or the Released Claims, or (3) any communications prior to the date of this Agreement between the Parties with respect to the Released Claims, or this Agreement (the "Confidential Matters"). In the event that any of the parties, or any attorney, agent, successor or assign of any of the parties receives a subpoena or order requesting or requiring that any of the Confidential Matters be disclosed, or any of the parties, or any attorney, agent, successor or assign of any of the parties, decides to disclose any of the Confidential Matters for any reason other than required disclosure of publicly traded companies under the securities laws and regulations, the person or entity receiving the subpoena or order, or deciding to disclose the Confidential Matters, shall promptly notify the parties to this Agreement prior to disclosure, of that subpoena or order, or intent to disclose the Confidential Matters. A party may, without violating this paragraph, inform anyone that "All matters and disputes between the parties have been settled pursuant to agreement," or words of similar meaning and substance. A party may disclose this Agreement to that party's attorneys or accountants, provided that the attorneys or accountants agree to keep the matter confidential pursuant to the terms of this section as if they were a party to this Agreement.

6.    Representations and Warranties.    Each party to this Agreement represents and warrants to the others that: (a) it has full power and authority to enter into this Agreement and perform all of its obligations under this Agreement, has duly executed and delivered this Agreement, and this Agreement is legally binding on it and is enforceable in accordance with its terms; (b) the execution, delivery and performance of the transactions contemplated herein do not conflict with or violate, or result in a breach of or constitute a default under, any contract or agreement to which it is a party or by which it is bound; and (c) no consent or approval from any person, firm or entity, or any governmental authority or court, is required in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated by this Agreement. Each of the parties represents and warrants that it has not filed for or been the subject of any bankruptcy or insolvency proceeding or receivership since the Released Claims

5.

arose, that it is competent and authorized to enter into and perform this Agreement, and will be bound by the terms of this Agreement. Each party to this Agreement represents and warrants that the party has relied upon the party's own judgment and the judgment of the party's own respective legal counsel regarding the every aspect of this Agreement, and that no statements or representations (expressed or implied) were made by any other party or any other party's agents, employees, officers, directors or legal representatives that have influenced or induced the party to execute this Agreement. Each party has prior to the negotiation, drafting and execution of this Agreement obtained for itself of sufficient relevant information to intelligently exercise the party's independent judgment regarding this Agreement. Each of the parties assumes the risk of any mistake of fact or any fact which may be unknown to them relating to this Agreement or the Released Claims. By executing this Agreement and granting the releases in this Agreement, it is the full intent of each of the parties to this Agreement to release the opposing parties respectively from unknown or unforeseen losses, costs, expenses, liabilities, claims, injuries, damages and consequences thereof which may or will result from the Released Claims prior to or after the date of the execution of this Agreement arising out of facts that occurred prior to the date of this Agreement, regardless of when the damages were incurred.

7.    Warranty of Ownership.    The Note Holders represent and warrant that they are the sole lawful owners of all of the Notes and Released Note Holder Claims free of all liens and interests, and that they have not transferred, encumbered or assigned any interest in any of the Released Claims to any person or entity. The Note Holders agree to indemnify and hold FastFunds, Equitex and the Company Affiliates harmless from any claims, demands, actions, causes of action or suits brought against FastFunds, Equitex or the Company Affiliates by any person or entity claiming any interest in any of the Notes or Released Note Holder Claims.

8.    Accord and Satisfaction.    The covenants, promises and agreements contained in this Agreement are made pursuant to a settlement between the parties to this Agreement, represent a compromise of disputed claims, and are not an admission of liability by any of the parties to this Agreement.    This Agreement is in full accord and satisfaction of all disputed claims between the parties to this Agreement.

9.    Notices.    All notices permitted, provided for, necessary or convenient in connection with this Agreement shall

6

be effective (a) when the confirmation is electronically recorded after being sent by telecopier to the telecopier numbers for the parties set forth in Exhibit 1 attached, or (b) the next business day after being sent for overnight delivery, proper charges pre-paid, by a reputable overnight delivery service or U.S. Express Mail to the notice address of the parties set forth in Exhibit 1 attached, or (c) upon the seventh business day after being mailed certified or registered mail, return receipt requested, proper postage prepaid to the notice address of the parties set forth in Exhibit 1 attached (or to any subsequent Notice Address for which the other parties have been given notice as provided for herein).

10. <u>Exception From Release</u>. Notwithstanding any other provision contained in this Agreement to the contrary, the parties hereto acknowledge and agree that this Agreement and the provisions contained herein do not purport to release or affect any of the rights, interests or claims of Paul A. Moore, Anglo Irish BK (Suisse) S.A, Fritz Voelker or Kevin F. Flynn June 1992 Non-Exempt Trust pursuant to the issuance of certain 9.5% Convertible Notes issued by FastFunds to such parties on December 10, 2004; December 22, 2004; December 3, 2004 and November 24, 2004 respectively.

11. <u>General Provisions</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors and assigns. This Agreement may be executed in any number of counterparts, all of which will be considered one and the same agreement. The signatures to this Agreement may be delivered by facsimile or other means of electronic transmission (and signatures so delivered shall be valid and binding to the same extent as original signature). All of the parties, with the assistance of their counsel, have participated in the drafting and negotiation of this Agreement, and the Agreement shall be construed as if it were prepared by all of the parties to this Agreement, without regard to who originally drafted or proposed any section or term of the Agreement. This Agreement reflects the entire understanding between the parties to this Agreement, and fully supersedes and replaces any and all alleged or actual prior agreements or understandings between the parties to this Agreement. No statements, promises or inducements by any of the parties or any agent of any of the parties to this Agreement shall be valid or binding unless they are contained in this Agreement. No modification or amendment to this Agreement shall be valid or binding unless that modification or amendment is set forth in a subsequent written document executed by each of the parties to

be bound by the amendment or modification.  This Agreement shall be construed in accordance with the laws of the State of Colorado.  If any provision of this Agreement or the application of that provision to any party or circumstances shall be held invalid, the remainder of the Agreement, or the application of that provision to the party or circumstances other than those to which it is held invalid, shall not be affected by that determination.  In view of the purposes of this Agreement, it is agreed that the remedy at law for failure of any party to perform would be inadequate and that the injured party or parties, at its or his option, shall have the right to compel the specific performance of this Agreement in a court of competent jurisdiction, to the extent permitted by applicable law and not expressly prohibited by this Agreement.  The prevailing party in any proceeding shall be entitled to recover its reasonable attorneys' fees and costs of collection to enforce any provision of this Agreement.  All of the representations and warranties in this Agreement shall survive the execution and delivery and performance of obligations pursuant to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement to be effective as of the date first written above.

FASTFUNDS FINANCIAL CORPORATION:

By: _____
   Its: _____

EQUITEX, INC.

By: _____
   Its: _____

5  1|8

8

05/24/2001  18:05    4805611795                          GLURAL                           PAGE  01
     03/11/00  11:40 FAX 14673054038            MAROON BELLS                              Ø001

be bound by the amendment or modification.  This Agreement shall
be construed in accordance with the laws of the State of
Colorado.  If any provision of this Agreement or the application
of that provision to any party or circumstances shall be held
invalid, the remainder of the Agreement, or the application of
that provision to the party or circumstances other than those to
which it is held invalid, shall not be affected by that
determination.  In view of the purposes of this Agreement, it is
agreed that the remedy at law for failure of any party to
perform would be inadequate and that the injured party or
parties, at its or his option, shall have the right to compel
the specific performance of this Agreement in a court of
competent jurisdiction, to the extent permitted by applicable
law and not expressly prohibited by this Agreement.  The
prevailing party in any proceeding shall be entitled to recover
its reasonable attorneys' fees and costs of collection to
enforce any provision of this Agreement.  All of the
representations and warranties in this Agreement shall survive
the execution and delivery and performance of obligations
pursuant to this Agreement.

     IN WITNESS WHEREOF, the parties have executed this Settlement
Agreement to be effective as of the date first written above.

                              FASTFUNDS FINANCIAL CORPORATION:

                              By: _____
                                 Its: _____

                              EQUITEX, INC.

                              By: _____
                                 Its: _____

5   118                                8

NOTEHOLDERS:
MBC GLOBAL, LLC:

By:
    Its:


CORPORATE CAPITAL, INC.:

By: _____
    Its: _____


CAROLYN COMPANIES:

By: _____
    Its: _____


MOORE INVESTMENTS, INC.:

By:
    Its: _____


PAUL A. MOORE


KATHY MOORE


KEVIN F. FLYNN JUNE 1992 NON-
EXEMPT TRUST:

By: _____
    Its Trustee

9

NOTEHOLDERS:
MBC GLOBAL, LLC:

By: _____
        Its: _____

CORPORATE CAPITAL, INC.:

By: _____
        Its: _____

CAROLYN COMPANIES:

By: _____
        Its: _____

MOORE INVESTMENTS, INC.:

By: _____
        Its: _____

PAUL A. MOORE

_____

KATHY MOORE

_____

KEVIN F. FLYNN JUNE 1992 NON-
EXEMPT TRUST:

By: _____
        Its Trustee

9

08/11/06  11:41 FAX 16472938038      MAROON BELLS      _____      @012

Max 10 06 06:32p    Vanessa Morson         415-775-7009        p.2

NOTEHOLDERS:

MBC GLOBAL, LLC:

By: _____
        Its: _____

CORPORATE CAPITAL, INC.:

By: _____
        Its: _____

CAROLYN COMPANIES:

By: _____
        Its: _____

MOORE INVESTMENTS, INC.:

By: _____
        Its: _____

PAUL A. MOORE

_____

KATHY MOORE

_____

KEVIN F. FLYNN JUNE 1992 NON-
EXEMPT TRUST:

By: _____
        Its Trustee

9

S  418

05/11/06  11:41 FAX 18472988035        MAROON BELLS                ☒014

MAY-10-06  17:01  From:                                    T-188  P.18/18  Job-747

NOTEHOLDERS:
MBC GLOBAL, LLC:

By: _____
        Its: _____


CORPORATE CAPITAL, INC.:

By: _____
        Its: _____


CAROLYN COMPANIES:

By: _____
        Its: _____


MOORE INVESTMENTS, INC.:

By: _____
        Its: _____


PAUL A. MOORE


_____


KATHY MOORE


_____


KEVIN F. FLYNN JUNE 1992 NON-
EXEMPT TRUST:

By: _____
        Its Trustee

9

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By: _____

Its: _____

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN F. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL RYWECK

_____


S 4\8

10

08/17/06  18:34 FAX 18472956035        MAROON BELLS                        @002

Fritz voelker                                  303-455-1490          p.1

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By:
        Its: _____

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN F. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL RYWECK

_____

10

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By: _____

     Its: _____

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL RYWECK

_____

10

05/11/06  11:41 FAX 18472958035        MAROON BELLS    _____              ☑016

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By: _____
    Its: _____

FRITS VOELKER

_____


JON ERIC LANDRY

_____


COLIN F. MARKEY

_____


SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANELL NYWECK

_____

MAROON BELLS ☑017

## Exhibit 1

### List of the Note Holders

MBC Global, LLC, an Illinois limited liability company ("MBC")
269 Market Square, Lake Forest, Illinois 60045

Corporate Capital, Inc. a Minnesota corporation
13911 Ridgedale Drive, Suite 375, Minnetonka, Minnesota 55305

Carolyn Companies, a Colorado corporation
139 24th Avenue, San Francisco, California 94121

Moore Investments, Inc., an Illinois corporation
269 Market Square, Lake Forest, Illinois 60045]

Theodore H. Swindells
139 24th Avenue, San Francisco, California 94121

Paul A. Moore
269 Market Square, Lake Forest, Illinois 60045

Kathy Moore
269 Market Square, Lake Forest, Illinois 60045

Kevin F. Flynn, as Trustee of the Kevin F. Flynn June 1992 Non-
Exempt Trust; c/o Emerald Ventures; Attn: Paul Donnally, 120
North LaSalle Street, Suite 3300, Chicago, Illinois 60602

European American Perinvest Group Bermuda, a British Virgin
Island corporation
139 24th Avenue, San Francisco, California 94121

Fritz Voelker
1755 Central Street, Suite 1, Denver, Colorado 80201

John Eric Landry
269 Market Square, Lake Forest, Illinois 60045

Colin P. Markey
269 Market Square, Lake Forest, Illinois 60045

Sheria Swiontek
269 Market Square, Lake Forest, Illinois 60045

05/11/06  11:42 FAX 18472955055          MAROON BELLS                                    @018

Mark Savage
13911 Ridgedale Drive, Suite 375, Minnetonka, Minnesota 55305

Daniel Ryweck
13911 Ridgedale Drive, Suite 375, Minnetonka, Minnesota 55305

### Shares to be Issued (per Section 1):

Shares shall be issued to each of the Note Holders with the number of shares specified opposite each Note Holders' name.

| Note Holder | Shares |
|---|---|
| Theodore H. Swindells | 54,000 |
| Mark Savage | 6,000 |
| Daniel Ryweck | 3,000 |
| Paul A. Moore | 30,550 |
| Kathy Moore | 13,500 |
| Kevin F. Flynn, Trustee of the Kevin F. Flynn June 1992 Non-Exempt Trust | 31,500 |
| Fritz Voelker | 18,000 |
| Jon Eric Landry | 12,600 |
| Colin P Markey | 9,950 |
| Sheria Swiontek | 900 |

### Equitex, Inc. Notice Address:

Equitex, Inc.
7315 East Peakview Avenue
Englewood, Colorado 80111

### FastFunds Financial Corporation Notice Address:

FastFunds Financial Corporation
11000 Wayzata Boulevard, Suite 111
Minnetonka, Minnesota 55305

12

**EXHIBIT A**

_____, 200___

[Transfer Agent]

Re:   Equitex Registration Statement

Ladies and Gentlemen:

As counsel to Equitex, Inc. (the "Company"), we have been requested to render our opinion to you in connection with the resale by the individuals or entities listed on Schedule A attached hereto (the "Selling Stockholders"), of an aggregate of 180,000 shares (the "Shares") of the Company's Common Stock.

A Registration Statement on Form [S-3] under the Securities Act of 1933, as amended (the "Act"), with respect to the resale of the Shares was declared effective by the Securities and Exchange Commission on [date]. Enclosed is the Prospectus dated [date]. We understand that the Shares are to be offered and sold in the manner described in the Prospectus.

Based upon the foregoing, upon request by the Selling Stockholders at any time while the registration statement remains effective, it is our opinion that the Shares have been registered for resale under the Act and new certificates evidencing the Shares upon their transfer or re-registration by the Selling Stockholders may be issued without restrictive legend. We will advise you if the registration statement is not available or effective at any point in the future.

Very truly yours,

[Company counsel]

05/11/06   11:48 FAX 18472958035              MAROON BELLS                                                          @040

## Schedule A

| Selling Stockholder | B/N/O | Shares Being Offered |
|---|---|---|

NY3 82476.5
20389110050
05/03/2806 jat

# EXHIBIT "B"

05/11/06   11:49 FAX 18472958035                    MAROON BELLS                                                    ☒001/011

## STOCK SALE AND LOCK-UP AGREEMENT

AGREEMENT dated as of the May 10, 2006, by and among Equitex, Inc., (the "Company"), and MBC Global, LLC, an Illinois limited liability company ("MBC"), Corporate Capital, Inc. a Minnesota corporation, Carolyn Companies, a Colorado corporation, Moore Investments, Inc., an Illinois corporation, Paul A. Moore, Kathy Moore, Kevin F. Flynn, as Trustee of the Kevin F. Flynn June 1992 Non-Exempt Trust, European American Perinvest Group Bermuda., a British Virgin Island corporation, Fritz Voelker John Eric Landry, Colin P. Markey, Sherie Swiontek, Mark Savage and Daniel Rywenk (collectively referred to as the "Shareolders or Shareholder")

### WITNESSETH:

WHEREAS, the Company and the Shareholders have entered into a Settlement Agreement dated May 10, 2006 (the "Settlement Agreement");

WHEREAS, pursuant to the terms of the Settlement Agreement each Shareholder received shares of common stock of the Company;

WHEREAS, pursuant to the terms of the Settlement Agreement the parties hereto have agreed to place certain restrictions on the sale or transfer of the Shareholder's Stock.

NOW, THEREFORE, in consideration of the mutual agreements and covenants contained herein and for other valuable consideration receipt of which is hereby acknowledged, it is agreed as follows:

1.     Except as provided herein, the Shareholder agrees that the Shareholder will not sell, pledge or otherwise dispose of any of the Shareholder's Stock for a period of 3 months from the date hereof. The Shareholder shall be permitted to sell a maximum of one-third of the shares received by the respective Shareholder every thirty days, beginning with the delivery of the first certificates. An Escrow Agreement shall be entered into whereby EQTX shall deliver to the Escrow Agent three certificates in the name of each Shareholder. Upon receipt of the shares, the Escrow Agent shall release those shares as permitted and each thirty days thereafter in accordance with the terms of the Escrow.

2.     The foregoing restrictions on the sale of the Shareholder's Stock does not prohibit: (a) any pledge of Shares made pursuant to a bona fide loan transaction that creates a security interest; (b) any transfer to the ancestors, descendants (including adopted children) or spouse of the Shareholder or to trusts for the benefit of such persons or the Shareholder; (c) any transfer to any entity which is wholly owned or controlled by the Shareholder; (d) any bona fide gift; (e) transfers or distributions pursuant to testamentary transfers or pursuant to the laws of intestate succession; or, (f) transfers to any affiliates (officers, directors, or 5% shareholders) of the Shareholder involving less than 5% of the Company's outstanding shares; provided that the Shareholder shall inform the Company and the recipient of such pledge, transfer or gift prior to effecting it. Notwithstanding the foregoing, in the event of a pledge, transfer or gift according to the

foregoing all certificates shall bear the notation and be subject to the restrictions set forth in section 1 herein.

3.    The restrictions set forth in paragraph 2 also shall only lapse and be of no further effect upon the dissolution of the Company.

4.    The limitation on the number of shares of common stock which may be sold hereunder pursuant to paragraph 2 hereof shall be adjusted proportionally to reflect any stock dividend or stock split, combination of shares, merger, or consolidation effected by the Company.

5    Each of the Parties hereto represents and warrants to the other that it has the requisite power, corporate or otherwise, and authority to enter into and perform this Agreement and the transactions contemplated hereby; that the execution, issuance and delivery of this Agreement and the agreements and transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action and no further consent or authorization on behalf of the Parties is required; and that this Agreement constitutes the valid and binding obligation of each of the Parties enforceable against each of the Parties in accordance with its terms.

6.    The Parties hereby covenant, each to the other, that it and they shall execute any further documentation as may be required reasonably to give effect to this Agreement, the agreements referred to herein, and the transactions contemplated hereby and thereby.

7.    This Agreement is irrevocable and shall be binding on the undersigned and the respective successors, heirs, personal representatives, and assigns of the undersigned.

8.    This Agreement sets forth the entire understanding of the Parties hereto with respect to the subject matter hereof, merges and supersedes all existing agreements between or among any of them concerning the subject matter hereof, and may be altered or amended only by written instrument duly executed by the Party against whom such alteration or amendment is sought to be enforced.

9.    All notices or other communications given or made pursuant hereto shall be in writing and shall be deemed given if delivered personally or by facsimile or sent by overnight courier to the Parties at the following addresses (or at such other address or facsimile number for the Party as shall be specified by like notice):

Company:    Equitex, Inc.
            7315 East Peakview Avenue
            Englewood, Colorado 80111

Shareholder:  Shareholders and addresses as set forth Exhibit 1.

10.   This Agreement shall be governed and construed in accordance with the laws of the State of Delaware applicable to agreements made and to be performed entirely within such State.

11.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed, as of the day and year first above written.

Equitex, Inc.

By:

Name:

Title:

MBC GLOBAL, LLC

By:

Its:

CORPORATE CAPITAL, INC.

By:

Its:

10.    This Agreement shall be governed and construed in accordance with the laws of the State of Delaware applicable to agreements made and to be performed entirely within such State.

11.    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed, as of the day and year first above written.

Equitex, Inc.

By: _____
Name: _____
Title: _____


MBC GLOBAL, LLC:

By: _____
    Its: _____


CORPORATE CAPITAL, INC.:

By: _____
    Its: _____

05/11/06  11:50 FAX 18472968035          MAROON BELLS

May 10 06 06:33p    Vanessa Morson                415-776-7005          ☒005/011
                                                                        p.6

CAROLYN COMPANIES:

By: _____

        Its: _____

_____

MOORE INVESTMENTS, INC.:

By: _____

        Its: _____

_____

PAUL A. MOORE

_____

KATHY MOORE

_____

KEVIN F. FLYNN JUNE 1992 NON-
EXEMPT TRUST:

By: _____

        Its Trustee

EUROPEAN AMERICAN PERINVEST
GROUP BERMUDA

By: _____

        Its: Shareholder

SS₃h

05/11/06  11:61 FAX 18472956035    MAROON BELLS    ☎006/011

CAROLYN COMPANIES:

By: _____

Its: _____

MOORE INVESTMENTS, INC.:

By: _____

Its: _____

PAUL A. MOORE

_____

KATHY MOORE

_____

KEVIN F. FLYNN JUNE 1992 NON-EXEMPT TRUST:

By: _____

Its Trustee

EUROPEAN AMERICAN PERINVEST
GROUP BERMUDA

By: _____

Its: _____

55 8/7

05/11/06  11:51 FAX 18472955035        MAROON BELLS                               ☒007/011

MAY-10-06  [8:57  From:                                      T-103  P.04/10  Job-747

CAROLYN COMPANIES:

By: _____

    Its: _____


MOORE INVESTMENTS, INC.:

By: _____

    Its: _____


PAUL A. MOORE

_____


KATHY MOORE

_____


KEVIN F. FLYNN JUNE 1992 NON-
EXEMPT TRUST:

By: _____

    Its Trustee


EUROPEAN AMERICAN PERINVEST
GROUP BERMUDA

By: _____

    Its: _____

05/11/98  11:51 FAX 18472958035        MAROON BELLS                          ☐009/011

JON ERIC LANDRY

COLIN P. MARKEY

SHERIE SWIONTEK

MARK SAVAGE

DANEIL RYWECK

FRITZ VOELKER

05/11/06 11:31 FAX 18472958035 MAROON BELLS @008/011

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL RYWECK

_____

FRITZ VOELKER

_____

05/17/06  16:35 FAX 18472958035          MAROON BELLS                          ☒005

                    Fritz voelker                                    303-465-1490          p.1

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANBIL RYWECK

_____

FRITZ VOELKER

## Exhibit 1

MBC Global, LLC, an Illinois limited liability company
("MBC")
269 Market Square, Lake Forest, Illinois 60045

Corporate Capital, Inc. a Minnesota corporation
13911 Ridgedale Drive, Suite 375, Minnetonka, Minnesota
55305

Carolyn Companies, a Colorado corporation
139 24th Avenue, San Francisco, California 94121

Moore Investments, Inc., an Illinois corporation
269 Market Square, Lake Forest, Illinois 60045]

Theodore H. Swindells
139 24th Avenue, San Francisco, California 94121

Paul A. Moore
269 Market Square, Lake Forest, Illinois 60045

Kathy Moore
269 Market Square, Lake Forest, Illinois 60045

Kevin F. Flynn, as Trustee of the Kevin F. Flynn June 1992
Non-Exempt Trust; c/o Emerald Ventures; Attn: Paul
Donnelly, 120 North LaSalle Street, Suite 3300, Chicago,
Illinois 60602

European American Perinvest Group Bermuda, a British Virgin
Island corporation
139 24th Avenue, San Francisco, California 94121

John Eric Landry
269 Market Square, Lake Forest, Illinois 60045

Colin P. Markey
269 Market Square, Lake Forest, Illinois 60045

Sherie Swiontek
269 Market Square, Lake Forest, Illinois 60045

Mark Savage
13911 Ridgedale Drive, Suite 375, Minnetonka, Minnesota
55305

Daniel Ryweck
13911 Ridgedale Drive, Suite 375, Minnetonka, Minnesota
55305

Fritz Voelker
1755 Central Street, Suite 1,
Denver, Col. 80201

## Shares to be Issued (per Section 1):

Shares shall be issued to each of the Note Holders
with the number of shares specified opposite each Note
Holders' name.

| Note Holder | Shares |
| --- | --- |
| Theodore H. Swindells | 54,000 |
| Mark Savage | 6,000 |
| Daniel Ryweck | 3,000 |
| Paul A. Moore | 30,550 |
| Kathy Moore | 13,500 |
| Kevin F. Flynn, Trustee of the Kevin F. Flynn June 1992 Non-Exempt Trust | 31,500 |
| Fritz Voelker | 18,000 |
| Jon Eric Landry | 12,600 |
| Colin P Markey | 9,950 |
| Sherie Swiontek | 900 |

## Equitex, Inc. Notice Address:

Equitex, Inc.
7315 East Peakview Avenue
Englewood, Colorado 80111

## FastFunds Financial Corporation Notice Address:

FastFunds Financial Corporation
11000 Wayzata Boulevard, Suite 111
Minnetonka, Minnesota 55305

# EXHIBIT "C"

05/11/06  11:43 FAX 184729560. 5          MAROON BELLS                              @013 ✓

# REGISTRATION AGREEMENT

This Registration Agreement (this "Agreement") is made and entered into effective as of May 10, 2006, by and between Equitex, Inc. (the "Company") and persons or entities listed on the signature page hereof ("SHAREHOLDER").

This Agreement is made in connection with certain provisions a Settlement Agreement dated as of May 10, 2006, between the Company and SHAREHOLDER.

The Company and SHAREHOLDER hereby agree as follows:

1.    **Definitions.**  Capitalized terms used and not otherwise defined herein that are defined in the Settlement Agreement shall have the meanings given such terms in the Settlement Agreement. As used in this Agreement, the following terms shall have the following meanings:

"*Commission*" means the Securities and Exchange Commission.

"*Common Stock*" means shares of the Company's common stock, par value $0.01 per share.

"*Effectiveness Date*" means with respect to the initial Registration Statement required to be filed hereunder, a date forty five (45) days following the date hereof.

"*Effectiveness Period*" has the meaning set forth in Section 2(a).

"*Exchange Act*" means the Securities Exchange Act of 1934, as amended, and any successor statute.

"*Holder*" or "*Holders*" means SHAREHOLDER or any of its affiliates or transferees to the extent any of them hold Registrable Securities, other then those purchasing Registrable Securities in a market transaction.

"*Indemnified Party*" has the meaning set forth in Section 5(c).

"*Indemnifying Party*" has the meaning set forth in Section 5(c).

"*Proceeding*" means an action, claim, suit, investigation or proceeding (including, without limitation, an investigation or partial proceeding, such as a deposition), whether commenced or threatened.

"*Prospectus*" means the prospectus included in a Registration Statement (including, without limitation, a prospectus that includes any information previously omitted from a prospectus filed as part of an effective registration statement in reliance upon Rule 430A promulgated under the Securities Act), as amended or supplemented by any prospectus supplement, with respect to the terms of the offering of any portion of the Registrable Securities

NY3124795.5
2055591100190
05/03/2006.js7

covered by such Registration Statement, and all other amendments and supplements to the Prospectus, including post-effective amendments, and all material incorporated by reference or deemed to be incorporated by reference in such Prospectus.

"*Registrable Securities*" means the shares of Common Stock issued upon the execution of the Settlement Agreement.

"*Registration Statement*" means each registration statement required to be filed hereunder, including the Prospectus therein, amendments and supplements to such registration statement or Prospectus, including pre- and post-effective amendments, all exhibits thereto, and all material incorporated by reference or deemed to be incorporated by reference in such registration statement.

"*Rule 144*" means Rule 144 promulgated by the Commission pursuant to the Securities Act, as such Rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the Commission having substantially the same effect as such Rule.

"*Rule 415*" means Rule 415 promulgated by the Commission pursuant to the Securities Act, as such Rule may be amended from time to time, or any similar rule or regulation hereafter adopted by the Commission having substantially the same effect as such Rule.

"*Securities Act*" means the Securities Act of 1933, as amended, and any successor statute.

"*Settlement Agreement*" has the meaning given to such term in the Preamble hereto.

"*Trading Market*" means any of the NASD OTC Bulletin Board, NASDAQ SmallCap Market, the Nasdaq National Market, the American Stock Exchange or the New York Stock Exchange.

"*Warrants*" means the Common Stock purchase warrants issued pursuant to the Loan Agreement, evidenced by the Warrant dated as of October 7, 2003.

2.     Registration.

(a)     On or prior to May 15, 2006, the Company shall prepare and file with the Commission a Registration Statement covering the Registrable Securities for a selling stockholder resale offering to be made on a continuous basis pursuant to Rule 415. The Registration Statement shall be on Form S-3 (except if the Company is not then eligible to register for resale the Registrable Securities on Form S-3, in which case such registration shall be on another appropriate form in accordance herewith). The Company shall cause the Registration Statement to become and remain effective as provided herein. The Company shall use its best efforts to cause the Registration Statement to be declared effective under the Securities Act as promptly as possible after the filing thereof, but in any event no later than the Effectiveness Date. The Company shall use its reasonable commercial efforts to keep each Registration Statement continuously effective under the Securities Act until the date which is the earlier date of when (I) all Registrable Securities covered by such Registration Statement have been sold or (ii) all

Registrable Securities covered by such Registration Statement may be sold immediately without registration under the Securities Act and without volume restrictions pursuant to Rule 144(k), as determined by the counsel to the Company pursuant to a written opinion letter to such effect, addressed and acceptable to the Company's transfer agent and the affected Holders (each, an "Effectiveness Period").

If  (i) the Registration Statement is not filed on or before May 15, 2006; (ii) the Registration Statement filed hereunder is not declared effective by the Commission by the applicable Effectiveness Date; (iii) after a Registration Statement is filed with and declared effective by the Commission, a Discontinuation Event (as hereafter defined) shall occur and be continuing, or such Registration Statement ceases to be effective (by suspension or otherwise) as to all Registrable Securities to which it is required to relate at any time prior to the expiration of the Effectiveness Period applicable to such Registration Statement (without being succeeded immediately by an additional Registration Statement filed and declared effective), for a period of time which shall exceed 30 days in the aggregate per year or more than 20 consecutive calendar days (defined as a period of 365 days commencing on the date such Registration Statement is declared effective); or (iv) the Common Stock is not listed or quoted, or is suspended from trading on any Trading Market for a period of three (3) consecutive Trading Days (provided the Company shall not have been able to cure such trading suspension within 30 days of the notice thereof or list the Common Stock on another Trading Market); (any such failure or breach being referred to as an "Event," and for purposes of clause (i) or (ii) the date on which such Event occurs, or for purposes of clause (iii) the date which such 30 day or 20 consecutive day period (as the case may be) is exceeded, or for purposes of clause (iv) the date on which such three (3) Trading Day period is exceeded, being referred to as "Event Date"), then as partial relief for the damages to SHAREHOLDER by reason of the occurrence of any such Event (which remedy shall not be exclusive of any other remedies available at law or in equity), the Company shall pay to SHAREHOLDER, as liquidated damages and not as a penalty, for each day that an Event has occurred and is continuing, an amount in cash equal to one-thirtieth (1/30th) of the product of (A) the original principal amount converted into Registrable Securities under the Settlement Agreement multiplied by (B) the Applicable Percentage (as hereafter defined). For purposes hereof, the term "Applicable Percentage" means (i) for the first thirty (30) day period following the occurrence and during the continuance of such Event, two percent (2%), (ii) for the second thirty (30) day period following the occurrence and during the continuance of such Event, three percent (3%) and (iii) thereafter, four percent (4%). In the event the Company fails to make any payments pursuant to this Section 2(b) in a timely manner, such payments shall bear interest at the rate of 1.5% per month (prorated for partial months) until paid in full.

(5)  Within three business days of the Effectiveness Date, the Company shall cause its counsel to issue a blanket opinion substantially in the form attached hereto as Exhibit A, to the transfer agent stating that the shares are subject to an effective registration statement and can be reissued free of restrictive legend upon notice of a sale by SHAREHOLDER that it has complied with the prospectus delivery requirements, provided that the Company has not advised the transfer agent orally or in writing that the opinion has been withdrawn. Copies of the blanket opinion required by this Section 2(b) shall be delivered to SHAREHOLDER within the time frame set forth above.

NY3B2476.5
20388710050
05/13/2006 jxt

3

3.    **Registration Procedures.**  If and whenever the Company is required by the provisions hereof to effect the registration of any Registrable Securities under the Securities Act, the Company will, expeditiously:

(a)    prepare and file with the Commission a Registration Statement with respect to such Registrable Securities, respond as promptly as possible to any comments received from the Commission, and use its best efforts to cause such Registration Statement to become and remain effective for the Effectiveness Period with respect thereto, and promptly provide to SHAREHOLDER copies of all filings and Commission letters of comment relating thereto;

(b)    prepare and file with the Commission such amendments and supplements to such Registration Statement and the Prospectus used in connection therewith as may be necessary to comply with the provisions of the Securities Act with respect to the disposition of all Registrable Securities covered by such Registration Statement and to keep such Registration Statement effective until the expiration of the Effectiveness Period applicable to such Registration Statement;

(c)    furnish to SHAREHOLDER such number of copies of the Registration Statement and the Prospectus included therein (including each preliminary Prospectus) as SHAREHOLDER reasonably may request to facilitate the public sale or disposition of the Registrable Securities covered by such Registration Statement;

(d)    to the extent legally required use its commercially reasonable efforts to register or qualify SHAREHOLDER's Registrable Securities covered by such Registration Statement under the securities or "blue sky" laws of such jurisdictions within the United States as SHAREHOLDER may reasonably request, provided, however, that the Company shall not for any such purpose be required to qualify generally to transact business as a foreign corporation in any jurisdiction where it is not so qualified or to consent to general service of process in any such jurisdiction;

(e)    list the Registrable Securities covered by such Registration Statement with any securities exchange on which the Common Stock of the Company is then listed;

(f)    notify SHAREHOLDER at any time when a Prospectus relating thereto is required to be delivered under the Securities Act, of the happening of any event of which the Company has knowledge as a result of which the Prospectus contained in such Registration Statement, as then in effect, includes an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading in light of the circumstances then existing; and

(g)    make available for inspection by SHAREHOLDER and any attorney, accountant or other agent retained by SHAREHOLDER, all publicly available, non-confidential financial and other records, pertinent corporate documents and properties of the Company, and cause the Company's officers, directors and employees to supply all publicly available, non-confidential information reasonably requested by the attorney, accountant or agent of SHAREHOLDER.

4.    **Registration Expenses.**  All expenses relating to the Company's compliance with Sections 2 and 3 hereof, including, without limitation, all registration and filing fees, printing expenses, fees and disbursements of counsel and independent public accountants for the Company, fees and expenses (including reasonable counsel fees) incurred in connection with complying with state securities or "blue sky" laws, fees of the NASD, transfer taxes, fees of transfer agents and registrars, fees of, and disbursements incurred by, one counsel for SHAREHOLDERS (in an amount not to exceed $7500) are called "Registration Expenses". All selling commissions applicable to the sale of Registrable Securities, including any fees and disbursements of any special counsel to the Holders beyond those included in Registration Expenses, are called "Selling Expenses."  The Company shall only be responsible for all Registration Expenses.

5.    **Indemnification.**

       (a)    In the event of a registration of any Registrable Securities under the Securities Act pursuant to this Agreement, the Company will indemnify and hold harmless each Holder, and its officers, directors and each other person, if any, who controls such Holder within the meaning of the Securities Act, against any losses, claims, damages or liabilities, joint or several, to which such Holder, or such persons may become subject under the Securities Act or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in any Registration Statement under which such Registrable Securities were registered under the Securities Act pursuant to this Agreement, any preliminary Prospectus or final Prospectus contained therein, or any amendment or supplement thereof, or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, and will reimburse such Holder, and each such person for any reasonable legal or other expenses incurred by them in connection with investigating or defending any such loss, claim, damage, liability or action; provided, however, that the Company will not be liable in any such case if and to the extent that any such loss, claim, damage or liability arises out of or is based upon an untrue statement or alleged untrue statement or omission or alleged omission so made in conformity with information furnished by or on behalf of SHAREHOLDER, or any such person in writing specifically for use in any such document.

       (b)    In the event of a registration of the Registrable Securities under the Securities Act pursuant to this Agreement, SHAREHOLDER will indemnify and hold harmless the Company, and its officers, directors and each other person, if any, who controls the Company within the meaning of the Securities Act, against all losses, claims, damages or liabilities, joint or several, to which the Company or such persons may become subject under the Securities Act or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact which was furnished in writing by SHAREHOLDER to the Company expressly for use in (and such information is contained in) the Registration Statement under which such Registrable Securities were registered under the Securities Act pursuant to this Agreement, any preliminary Prospectus or final Prospectus contained therein, or any amendment or supplement thereof, or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, and will

reimburse the Company and each such person for any reasonable legal or other expenses incurred by them in connection with investigating or defending any such loss, claim, damage, liability or action, provided, however, that SHAREHOLDER will be liable in any such case if and only to the extent that any such loss, claim, damage or liability arises out of or is based upon an untrue statement or alleged untrue statement or omission or alleged omission so made in conformity with information furnished in writing to the Company by or on behalf of SHAREHOLDER specifically for use in any such document. Notwithstanding the provisions of this paragraph, SHAREHOLDER shall not be required to indemnify any person or entity in excess of the amount of the aggregate net proceeds received by SHAREHOLDER in respect of Registrable Securities in connection with any such registration under the Securities Act.

(c)     Promptly after receipt by a party entitled to claim indemnification hereunder (an "Indemnified Party") of notice of the commencement of any action, such Indemnified Party shall, if a claim for indemnification in respect thereof is to be made against a party hereto obligated to indemnify such Indemnified Party (an "Indemnifying Party"), notify the Indemnifying Party in writing thereof, but the omission so to notify the Indemnifying Party shall not relieve it from any liability which it may have to such Indemnified Party other than under this Section 5(c) and shall only relieve it from any liability which it may have to such Indemnified Party under this Section 5(c) if and to the extent the Indemnifying Party is prejudiced by such omission. In case any such action shall be brought against any Indemnified Party and it shall notify the Indemnifying Party of the commencement thereof, the Indemnifying Party shall be entitled to participate in and, to the extent it shall wish, to assume and undertake the defense thereof with counsel satisfactory to such Indemnified Party, and, after notice from the Indemnifying Party to such Indemnified Party of its election so to assume and undertake the defense thereof, the Indemnifying Party shall not be liable to such Indemnified Party under this Section 5(c) for any legal expenses subsequently incurred by such Indemnified Party in connection with the defense thereof; if the Indemnified Party retains its own counsel, then the Indemnified Party shall pay all fees, costs and expenses of such counsel, provided, however, that, if the defendants in any such action include both the Indemnified Party and the Indemnifying Party and the Indemnified Party shall have reasonably concluded that there may be reasonable defenses available to it which are different from or additional to those available to the Indemnifying Party or if the interests of the Indemnified Party reasonably may be deemed to conflict with the interests of the Indemnifying Party, the Indemnified Party shall have the right to select one separate counsel and to assume such legal defenses and otherwise to participate in the defense of such action, with the reasonable expenses and fees of such separate counsel and other expenses related to such participation to be reimbursed by the Indemnifying Party as incurred.

(d)     In order to provide for just and equitable contribution in the event of joint liability under the Securities Act in any case in which either (i) SHAREHOLDER, or any officer, director or controlling person of SHAREHOLDER, makes a claim for indemnification pursuant to this Section 5 but it is judicially determined (by the entry of a final judgment or decree by a court of competent jurisdiction and the expiration of time to appeal or the denial of the last right of appeal) that such indemnification may not be enforced in such case notwithstanding the fact that this Section 5 provides for indemnification in such case, or (ii) contribution under the Securities Act may be required on the part of SHAREHOLDER or such officer, director or controlling person of SHAREHOLDER in circumstances for which indemnification is provided under this Section 5; then, and in each such case, the Company and SHAREHOLDER will, as

05/11/05  11:45 FAX 18472955935                    MAROON BELLS                                        Ø025

appropriate, contribute to the aggregate losses, claims, damages or liabilities to which they may be subject (after contribution from others) in such proportion to their relative fault, provided, however, that, in any such case, (A) SHAREHOLDER will not be required to contribute any amount in excess of the aggregate net proceeds received by SHAREHOLDER in respect of Registrable Securities in connection with any such registration under the Securities Act; and (B) no person or entity guilty of fraudulent misrepresentation (within the meaning of Section 10(f) of the Act) will be entitled to contribution from any person or entity who was not guilty of such fraudulent misrepresentation.

6.      Representations and Warranties.

(a)      The Common Stock is registered pursuant to Section 12(b) or 12(g) of the Exchange Act and, the Company has timely filed all proxy statements, reports, schedules, forms, statements and other documents required to be filed by it under the Exchange Act.  The Company has filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2006 (the "SEC Report").  The SEC Report was, at the time of its filing, in substantial compliance with the requirements of its respective form and none of the SEC Report, nor the financial statements (and the notes thereto) included in the SEC Report, as of its filing date, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.  The financial statements of the Company included in the SEC Report comply as to form in all material respects with applicable accounting requirements and the published rules and regulations of the Commission or other applicable rules and regulations with respect thereto.  Such financial statements have been prepared in accordance with generally accepted accounting principles ("GAAP") applied on a consistent basis during the periods involved (except (i) as may be otherwise indicated in such financial statements or the notes thereto or (ii) in the case of unaudited interim statements, to the extent they may not include footnotes or may be condensed) and fairly present in all material respects the financial condition, the results of operations and the cash flows of the Company and its subsidiaries, on a consolidated basis, as of, and for, the periods presented in such SEC Report.

(b)      The Company shall (i) maintain its status as a reporting company under the 1934 Act, (ii) file with the SEC in a timely manner all reports and other documents required of the Company under the 1934 Act, and (iii) furnish to each Holder upon request (A) a written statement by the Company that it has complied with the reporting requirements of the 1934 Act, (B) a copy of the Company's most recent Annual Report on Form 10-KSB or Quarterly Report on Form 10-QSB, and (C) such other information as may be reasonably requested in order to avail such Holder of any rule or regulation of the SEC and of any other securities authority that permits the selling of restricted securities without registration.

(c)      The Common Stock is listed for trading on the NASD OTC Bulletin Board and will satisfy all requirements for the continuation of such listing, and the Company shall do all things necessary for the continuation of such listing.  The Company has not received any notice that its Common Stock will be delisted from the NASD OTC Bulletin Board or that the Common Stock does not meet all requirements for the continuation of such listing.

05/11/06  11:48 FAX 18472958035          MAROON BELLS          @026

(d)     Neither the Company, nor any of its affiliates, nor any person acting on its or their behalf, has directly or indirectly made any offers or sales of any security or solicited any offers to buy any security under circumstances that would cause the offering of the Securities pursuant to the Loan Agreement to be integrated with prior offerings by the Company for purposes of the Securities Act which would prevent the Company from selling the Common Stock pursuant to Rule 506 under the Securities Act, or any applicable exchange-related stockholder approval provisions, nor will the Company or any of its affiliates or subsidiaries take any action or steps that would cause the offering of the Common Stock to be integrated with other offerings (other than such concurrent offering to SHAREHOLDER).

(e)     The Company will not issue any stop transfer order or other order impeding the sale and delivery of any of the Registrable Securities at such time as such Registrable Securities are registered for public sale or an exemption from registration is available, except as required by federal or state securities laws.

(f)     The Company understands the nature of the Registrable Securities issuable upon execution of the Settlement Agreement and recognizes that the issuance of such Registrable Securities may have a potential dilutive effect. The Company specifically acknowledges that its obligation to issue the Registrable Securities is binding upon the Company and enforceable regardless of the dilution such issuance may have on the ownership interests of other shareholders of the Company.

(g)     Except for agreements made in the ordinary course of business, there is no agreement that has not been filed with the Commission as an exhibit to a registration statement or to a form required to be filed by the Company under the Exchange Act, the breach of which could reasonably be expected to have a material and adverse affect on the Company and its subsidiaries, or would prohibit or otherwise interfere with the ability of the Company to enter into and perform any of its obligations under this Agreement in any material respect.

7.     **Miscellaneous.**

(a)     **Remedies.** In the event of a breach by the Company or by a Holder, of any of their respective obligations under this Agreement, each Holder or the Company, as the case may be, in addition to being entitled to exercise all rights granted by law and under this Agreement, including recovery of damages, will be entitled to specific performance of its rights under this Agreement.

(b)     **Compliance.** Each Holder covenants and agrees that it will comply with the prospectus delivery requirements of the Securities Act as applicable to it in connection with sales of Registrable Securities pursuant to any Registration Statement.

(c)     **Discontinued Disposition.** Each Holder agrees by its acquisition of such Registrable Securities that, upon receipt of a notice from the Company of the occurrence of a Discontinuation Event (as defined below), such Holder will forthwith discontinue disposition of such Registrable Securities under the applicable Registration Statement until such Holder's receipt of the copies of the supplemented Prospectus and/or amended Registration Statement or until it is advised in writing (the "Advice") by the Company that the use of the applicable

Prospectus may be resumed, and, in either case, has received copies of any additional or supplemental filings that are incorporated or deemed to be incorporated by reference in such Prospectus or Registration Statement. The Company may provide appropriate stop orders to enforce the provisions of this paragraph. For purposes of this Section 7(d), a "Discontinuation Event" shall mean (i) when the Commission notifies the Company that there will be a "review" of an effective Registration Statement (or amendment thereto) and whenever the Commission comments in writing on such filing (the Company shall provide true and complete copies thereof and all written responses thereto to each of the Holders); (ii) any request by the Commission or any other Federal or state governmental authority for amendments or supplements to such Registration Statement or Prospectus or for additional information; (iii) the issuance by the Commission of any stop order suspending the effectiveness of such Registration Statement covering any or all of the Registrable Securities or the initiation of any Proceedings for that purpose; (iv) the receipt by the Company of any notification with respect to the suspension of the qualification or exemption from qualification of any of the Registrable Securities for sale in any jurisdiction, or the initiation or threatening of any Proceeding for such purpose; and/or (v) the occurrence of any event or passage of time that makes the financial statements included in such Registration Statement ineligible for inclusion therein or any statement made in such Registration Statement or Prospectus or any document incorporated or deemed to be incorporated therein by reference untrue in any material respect or that requires any revisions to such Registration Statement, Prospectus or other documents so that, in the case of such Registration Statement or Prospectus, as the case may be, it will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

(d)    **Piggy-Back Registrations.** If at any time during any Effectiveness Period there is not an effective Registration Statement covering all of the Registrable Securities required to be covered during such Effectiveness Period and the Company shall determine to prepare and file with the Commission a registration statement relating to an offering for its own account or the account of others under the Securities Act of any of its equity securities, other than on Form S-4 or Form S-8 (each as promulgated under the Securities Act) or their then equivalents relating to equity securities to be issued solely in connection with any acquisition of any entity or business or equity securities issuable in connection with stock option or other employee benefit plans, then the Company shall send to each Holder written notice of such determination and, if within fifteen (15) days after receipt of such notice, any such Holder shall so request in writing, the Company shall include in such registration statement all or any part of such Registrable Securities such Holder requests to be registered, to the extent the Company may do so without violating registration rights of others which exist as of the date of this Agreement, subject to customary underwriter cutbacks applicable to all holders of registration rights and subject to obtaining any required consent of any selling stockholder(s) to such inclusion under such registration statement.

(e)    **Amendments and Waivers.** The provisions of this Agreement, including the provisions of this sentence, may not be amended, modified or supplemented, and waivers or consents to departure from the provisions hereof may not be given, unless the same shall be in writing and signed by the Company and the Holders of the then outstanding Registrable Securities. Notwithstanding the foregoing, a waiver or consent to depart from the provisions

NYNKI4765
28569110030
05/03/2006_ht

9

hereof with respect to a matter that relates exclusively to the rights of certain Holders and that does not directly or indirectly affect the rights of other Holders may be given by Holders of at least a majority of the Registrable Securities to which such waiver or consent relates; provided, however, that the provisions of this sentence may not be amended, modified, or supplemented except in accordance with the provisions of the immediately preceding sentence.

(f)      **Notices.**  Any notice or request hereunder may be given to the Company or SHAREHOLDER at the respective addresses set forth below or as may hereafter be specified in a notice designated as a change of address under this Section 7(g).  Any notice or request hereunder shall be given by registered or certified mail, return receipt requested, hand delivery, overnight mail, Federal Express or other national overnight mail next day carrier (collectively, "Courier") or telecopy (confirmed by mail).  Notices and requests shall be, in the case of those by hand delivery, deemed to have been given when delivered to any party to whom it is addressed, in the case of those by mail or overnight mail, deemed to have been given three (3) business days after the date when deposited in the mail or with the overnight mail carrier, in the case of a Courier, the next business day following timely delivery of the package with the Courier, and, in the case of a telecopy, when confirmed.  The address for such notices and communications shall be as set forth in the Loan Agreement or such other address as may be designated in writing hereafter in accordance with this Section 7(g) by such Person.

(g)      **Successors and Assigns.**  This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of each of the parties and shall inure to the benefit of each Holder.  The Company may not assign its rights or obligations hereunder without the prior written consent of each Holder.  Each Holder may assign their respective rights hereunder in the manner.

(h)      **Execution and Counterparts.**  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and, all of which taken together shall constitute one and the same agreement.  In the event that any signature is delivered by facsimile transmission, such signature shall create a valid binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature were the original thereof.

(i)      **Governing Law, Jurisdiction and Waiver of Jury Trial.**  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California applicable to contracts made and performed in such State, without regard to principles of conflicts of law.  The Company hereby consents and agrees that the state or federal courts located in the County of California, State of California shall have exclusion jurisdiction to hear and determine any Proceeding between the Company, on the one hand, and SHAREHOLDER, on the other hand, pertaining to this Agreement or to any matter arising out of or related to this Agreement; provided, that SHAREHOLDER and the Company acknowledge that any appeals from those courts may have to be heard by a court located outside of the County of California, State of California, and further provided, that nothing in this Agreement shall be deemed or operate to preclude SHAREHOLDER from bringing a Proceeding in any other jurisdiction to collect the obligations, to realize on the Collateral or any other security for the obligations, or to enforce a judgment or other court order in favor of SHAREHOLDER.  The Company expressly submits and consents in advance to such jurisdiction in any Proceeding

10

commenced in any such court, and the Company hereby waives any objection which it may have based upon lack of personal jurisdiction, improper venue or forum non conveniens. The Company hereby waives personal service of the summons, complaint and other process. The Company hereby waives personal service of the summons, complaint and other process issued in any such Proceeding and agrees that service of such summons, complaint and other process may be made by registered or certified mail addressed to the Company at the address set forth in Section 7(g) and that service so made shall be deemed completed upon the earlier of the Company's actual receipt thereof or three (3) days after deposit in the U.S. mails, proper postage prepaid. The parties hereto desire that their disputes be resolved by a judge applying such applicable laws. Therefore, to achieve the best combination of the benefits of the judicial system and of arbitration, the parties hereto waive all rights to trial by jury in any Proceeding brought to resolve any dispute, whether arising in contract, tort, or otherwise, between SHAREHOLDER and/or the Company arising out of, connected with, related or incidental to the relationship established between them in connection with this Agreement. If either party hereto shall commence a Proceeding to enforce any provisions of this Agreement, the Security Agreement or any other Ancillary Agreement, then the prevailing party in such Proceeding shall be reimbursed by the other party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such Proceeding.

(j)     **Cumulative Remedies.**  The remedies provided herein are cumulative and not exclusive of any remedies provided by law.

(k)     **Severability.**  If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, illegal, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions set forth herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated, and the parties hereto shall use their reasonable efforts to find and employ an alternative means to achieve the same or substantially the same result as that contemplated by such term, provision, covenant or restriction. It is hereby stipulated and declared to be the intention of the parties that they would have executed the remaining terms, provisions, covenants and restrictions without including any of such that may be hereafter declared invalid, illegal, void or unenforceable.

(l)     **Headings.**  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

[Balance of page intentionally left blank; signature page follows]

05/11/06  11:47 FAX 18472986035          MAROON BELLS                                    @030

IN WITNESS WHEREOF, the parties have executed this Registration Agreement as of the date first written above.

SHAREHOLDERS:

MBC GLOBAL, LLC

By: _____
        Its: _____

CORPORATE CAPITAL, INC.:

By: _____
        Its: _____

CAROLYN COMPANIES:

By: _____
        Its: _____

MOORE INVESTMENTS, INC.:

By: _____
        Its: _____

PAUL A. MOORE

_____

KATHY MOORE

_____

R 118

05/11/06   11:47 FAX 18472958038        MAROON BELLS                    ☒032

IN WITNESS WHEREOF, the parties have executed this Registration Agreement as of the date first written above.

SHAREHOLDERS:

MBC GLOBAL, LLC:

By: _____
           Its: _____

CORPORATE CAPITAL, INC.:

By: _____
           Its: _____

CAROLYN COMPANIES:

By: _____
           Its: _____

MOORE INVESTMENTS, INC.:

By: _____
           Its: _____

PAUL A. MOORE

_____

KATHY MOORE

_____

R 2|8

NY:382478.5
2038911 0090.
4545k3008 jar

12

05/11/06  11:47 FAX 18472958055          MAROON BELLS

May 10 06 06:32p    Vanessa Morson              416-775-7008          @031
                                                                      p.4

IN WITNESS WHEREOF, the parties have executed this Registration Agreement as of the date first written above.

SHAREHOLDERS:

MBC GLOBAL, LLC:

By: _____
    Its: _____

CORPORATE CAPITAL, INC.:

By: _____
    Its: _____

CAROLYN COMPANIES:

By: _____
    Its: _Principal_____

MOORE INVESTMENTS, INC.:

By: _____
    Its: _____

PAUL A. MOORE

_____

KATHY MOORE

_____

R 3/8

NY3\23476.5
203391 10030
05/03/2006.jef.

05/11/06  11:48 FAX 16472958035    MAROON BELLS    ⌀036

MAY-10-06 16:54  From:    T-193  P.02/16  Job-748

KEVIN F. FLYNN JUNE 1992 NON-EXEMPT
TRUST:

By: _____
          Its Trustee

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By: _____
          Its _____

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL KYWECK

_____

NY574764.5
203801112606
03/03/2006 jar

13

05/11/06   11:48 FAX 18472958038        MAROON BELLS

May 10 06 06:33p      Vanessa Morson

415-775-7009

℡035

P.5

KEVIN F. FLYNN JUNE 1992 NON-EXEMPT
TRUST:

By: _____
          Its Trustee

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By: _____
     Its: _____

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL RYWECK

_____

R 518

NY3854763
203891100030
05/03/2000 jat

05/17/06  16:34 FAX 18472955035        MAROON BELLS                          ☑003
                    Fritz voelker                        303-455-1490        p.1

KEVIN F. FLYNN JUNE 1992 NON-EXEMPT
TRUST:

By: _____
        Its Trustee

EUROPEAN AMERICAN PERINVEST GROUP
BERMUDA

By: _____
        Its: _____

FRITZ VOELKER



JON ERIC LANDRY


_____

COLIN P. MARKEY


_____

SHERIE SWIONTEK


_____

MARK SAVAGE


_____

DANEIL RYWECK


_____

05/11/06   11:47 FAX 18472956035      MAROON BELLS                       ☒034

KEVIN P. FLYNN JUNE 1992 NON-EXEMPT TRUST:

By: _____
         Its Trustee

EUROPEAN AMERICAN PERINVEST GROUP BERMUDA

By: _____
      Its _____

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANEIL RYWECK

_____

NY3824476.5
2022IP110050
05/05/2006.jat

13

KEVIN F. FLYNN JUNE 1992 NON-EXEMPT TRUST:

By: _____
                Its Trustee

EUROPEAN AMERICAN PERINVEST GROUP BERMUDA

By: _____
                Its:

FRITZ VOELKER

_____

JON ERIC LANDRY

_____

COLIN P. MARKEY

_____

SHERIE SWIONTEK

_____

MARK SAVAGE

_____

DANIEL RYWECK

R 718

NY363478.5
20369V(10250
03-03;2000 jd²

13

Equitex, Inc.

By: _____
Name: _____
Title: _____

ꝑ ꝛ 8

NY3635765.3
2020011:0056
05/10/2006 JW

14

# EXHIBIT "D"

# UNGARETTI
# & HARRIS

UNGARETTI & HARRIS LLP

CHICAGO
3500 Three First National Plaza
Chicago, Illinois 60602.4224
Telephone: 312.977.4400
Fax: 312.977.4405

WASHINGTON
1300 K Street, N.W., Suite 250
Washington, D.C. 20005.1714
Telephone: 202.630.7500
Fax: 202.639.7505

SPRINGFIELD
400 E. Jefferson Street, Suite 1200
Springfield, Illinois 62701.1053
Telephone: 217.544.7000
Fax: 217.544.7850

www.uhlaw.com

F. THOMAS HECHT
312.977.4322
fthecht@uhlaw.com

October 17, 2007

**BY FEDERAL EXPRESS**

Mr. Henry Fong
Mr. Barry Hollander
Equitex, Inc.
7315 East Peakview Avenue
Centennial, Colorado 80111

Equitex, Inc.
500 Australian Ave. South, Suite 625
West Palm Beach, Florida 33401

Dear Mr. Hollander:

    This firm has been retained to pursue claims that Colin Markey, Paul Moore, Kathy Moore, and Sherie Swiontek have asserted against Equitex for breach of the settlement agreement entered into on or about May, 2006. You have been repeatedly given notice of the claims; you have been repeatedly advised of the sums due; you have been repeatedly asked for updates and status reports. And you have done nothing in response other than to delay and mislead. The sums described to you by Mr. Markey are unquestionably due.

    The failure to make such payments constitutes a serious breach of the Settlement Agreement. It is also a violation of your covenant to perform the obligations of the Settlement Agreement in good faith. You are aware of the obligation; you have no objection to the sums requested; and yet you refuse to pay despite an unambiguous obligation to do so.

    If we do not hear from you by the close of business this Friday, October 19th, we will presume you have no interest in making the agreed upon payments and will take whatever action we feel to be appropriate.

Very truly yours,

F. Thomas Hecht

FTH/de
cc:   David Cade
       Paul D. Chestovich, Esq.

1026362-1